PLEDGE, APPELLANT, *v.* GRIFFITH, RESPONDENT.

(No. 2,190.)

(Submitted November 8, 1905. Decided November 17, 1905.)

*Election Contests—Appeal—Marked Ballots—Exhibits—Counting of Illegal Votes—When Harmless Error.*

Election Contests—Appeal—Exhibits—Marked Ballots.

1. *Held,* on appeal from a judgment in an election contest, that ballots, alleged to have been used on the trial and brought to the supreme court in a box to which was attached a memorandum of the trial judge to the effect that he had received the box from the clerk of the district court, had never opened it, but believed that

it contained the original ballots, may not be looked to for the purpose of ascertaining whether any of said ballots bear distinguishing marks, because not identified as the original ballots in their original form as introduced in evidence in the court below, and because of the absence of a certificate of the judge to that effect. (Rule VIII, Subd. 1, Rules of Supreme Court.)

Election Contests—Counting of Illegal Votes—When Harmless Error.

2. The votes cast for respondent in an election contest, in the county numbered 619; of these 37 were cast at a precinct located on an Indian reservation. The total vote of his opponent was 539, of which 12 were cast at said precinct. *Held,* that the reception of the ballots cast at said precinct, and alleged to be illegal, did not prejudice the rights of the unsuccessful candidate, nor those of the elector who instituted the contest proceedings, since, after deduction of the votes cast at that precinct for each candidate, from the total vote received by each in the county, the result of the election would not be affected.

*Appeal from District Court, Valley County; Henry C. Smith, Judge.*

PROCEEDING instituted by T. R. Pledge as an elector of Valley County, to contest the election of Walter S. Griffith, as sheriff of that county. From a judgment in favor of contestee the contestant appeals.

*Mr. Jesse B. Roote, Mr. William G. Downing,* and *Messrs. Hurd & Dignan,* for Appellant.

Section 1358, Political Code, as amended by House Bill No. 59, Session Laws of 1901, pages 117 to 119, included, provides that: "No elector shall place any mark upon his ballot by which it may afterward be identified as the one voted by him." (Sess. Laws, 1901, p. 119.) This law corresponds substantially with section 1215 of the Political Code of California, which provides: "That no voter shall place any mark upon his ballot by which it may afterward be identified as the one voted by him." This law has claimed the construction of the supreme court of California in a number of cases. (*People* v. *Campbell,* 138 Cal. 19, 70 Pac. 918; *Patterson* v. *Hanley,* 136 Cal. 270, 68 Pac. 821; *Farnham* v. *Boland,* 134 Cal. 151, 66 Pac. 200, 366; *Sego* v. *Stoddard,* 136 Ind. 297, 36 N. E. 204, 22 L. R. A. 468; *Zeis* v. *Passwater,* 142 Ind. 375, 41 N. E. 796; *Lay* v. *Parsons,* 104 Cal. 661, 38 Pac. 447; *Tebbe* v. *Smith,* 108 Cal. 110, 49 Am. St. Rep. 68, 41 Pac. 454, 29 L. R. A. 673; *Lauer*

v. *Estes,* 120 Cal. 654, 56 Pac. 262. See, also, *Steele* v. *Cal-houn,* 61 Miss. 556; *Oglesby* v. *Sigman,* 58 Miss. 502; *Taylor* v. *Bleakley,* 55 Kan. 1, 49 Am. St. Rep. 233, 39 Pac. 1045, 28 L. R. A. 683; *Sweeney* v. *Hjul,* 23 Nev. 409, 48 Pac. 1036.)

The provision of section 1358 of the Political Code of Montana, as amended by House Bill No. 59, Session Laws of 1901, page 117, that no elector shall place any mark upon his ballot by which it may afterward be identified as the one voted by him, is mandatory. (*Patterson* v. *Hanley,* 136 Cal. 270, 68 Pac. 821; *Murphy* v. *San Luis Obispo,* 119 Cal. 624, 51 Pac. 1085, 38 L. R. A. 444; *Tebbe* v. *Smith,* 108 Cal. 111, 49 Am. St. Rep. 68, 41 Pac. 454, 29 L. R. A. 673; *Lay* v. *Parsons,* 104 Cal. 661, 38 Pac. 447.)

It is certainly against the spirit of the election law, as set forth in section 1245 of the Political Code, for any election to be held within the exterior boundaries of an Indian agency, even though the building in which the balloting takes place is itself situated on the right of way of a railroad, conceding the right of way to be no part of the reservation. The voters themselves lived on the reservation. The voting place was but a few hundred yards from the Indian agent's office, and was "at" a trading post in the Indian country. (*Rogers* v. *Galloway Female College,* 64 Ark. 627, 44 S. W. 454, 39 L. R. A. 636; *Pittsburg etc. Ry. Co.* v. *Moore,* 152 Ind. 345, 53 N. E. 290, 44 L. R. A. 638.)

*Mr. Sam. Stephenson,* for Respondent.

It would appear from the finding of the trial court that its refusal to reject the ballots excepted to was not based so much upon the ground that the marks are not distinguishing marks as it is based upon the ground that the evidence does not justify him in finding that the alleged marks were placed upon the ballots by the voters. (*McCardle* v. *Barstow,* 145 Cal. 135, 78 Pac. 371; *Hannan* v. *Green,* 143 Cal. 19, 76 Pac. 709; *Trafton* v. *Quinn,* 143 Cal. 469, 77 Pac. 164; *Rhode* v. *Steinmetz,* 25 Colo. 308, 55 Pac. 815; *Parker* v. *Hughes,* 64 Kan. 216, 91 Am. St.

Rep. 216, 67 Pac. 643; *People* v. *Livingston,* 79 N. Y. 281; McCrary on Elections, sec. 472; *Fishback* v. *Bramel,* 6 Wyo. 293, 44 Pac. 840.)

Section 1245 of the Political Code is clearly unconstitutional. The Fort Peck Indian Reservation is a part of Valley county. The jurisdiction of the state extends over the Indian reservation, and all white men residing on the reservation and Indians who have dissolved their tribal relations are amenable to the laws of the state, and their property is taxable the same as any other resident of the state of Montana. (See *Cosier* v. *McMillan,* 22 Mont. 488, 56 Pac. 965; *Stiff* v. *McLaughlin,* 19 Mont. 300, 48 Pac. 232; *State* v. *Campbell,* 53 Minn. 354, 55 N. W. 553, 21 L. R. A. 172; *Torrey* v. *Baldwin,* 3 Wyo. 430, 26 Pac. 908; *Moore* v. *Beason,* 7 Wyo. 292, 51 Pac. 875.)

Qualified electors residing upon the reservation have the same right to vote as the qualified electors who do not reside upon an Indian reservation, but to deprive them of an election precinct or of a polling place or to require that the polling place should be established a great distance from their habitation in effect deprives them of the right of suffrage. The right of a citizen to vote granted him by the Constitution cannot be impaired or taken away even by an Act of the legislature. (*Earl* v. *Lewis,* 28 Utah, 116, 77 Pac. 238; *State* v. *Baker,* 38 Wis. 72; *Attorney General* v. *Detroit,* 78 Mich. 545, 44 N. W. 388, 7 L. R. A. 99; *Morris* v. *Powell,* 125 Ind. 281, 25 N. E. 221, 9 L. R. A. 334.) The legislature has no right to pass a law which will deprive any of the qualified electors of the state of the right to vote, or which would inflict a hardship upon any locality or class of persons.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the general election held in 1904, Harry Cosner was the Democratic candidate for sheriff of Valley county, Montana, and the respondent, Walter S. Griffith, was the Republican nominee for the same office. Griffith was declared elected and a certificate of election issued to him. Thereupon this appellant,

as an elector of that county, commenced an election contest under the provisions of Title II, Part III, of the Code of Civil Procedure, alleging malconduct on the part of the judges of election in certain particulars enumerated in the statement of contest. Issues having been joined, a trial was had before the court sitting without a jury. The court recounted the ballots and, as result, entered judgment declaring the respondent duly elected to said office. From that judgment the contestant appeals.

In this court only two contentions are made: 1. The court erred in counting for the respondent certain ballots which appellant contends bear distinguishing marks; and 2. The court erred in counting for the respondent the votes cast at Poplar precinct.

1. At the close of the trial the district court made an order as follows: "It was ordered by the court that in the event of an appeal herein, the original ballots excepted and objected to by both parties, marked as exhibits by the stenographer, become part of the record on appeal and be certified up to the supreme court, according to law, and that the bill of exceptions need not copy or set forth the said exhibits, but that the originals be used."

The bill of exceptions does not contain copies of any of the ballots used at the trial. In this court we are asked to consider a large number of ballots which were brought into court as the ballots used upon the hearing in the district court. These ballots are not identified in any manner whatever. There is not any certificate of the judge of the trial court on, or attached to, any of them. The ballots were brought into this court in a box, to which box was attached a memorandum in writing by the judge who presided at the trial of the case, to the effect that he had received the box from the clerk of the district court of Valley county, had never opened it or examined its contents, but believes it contains the original ballots used upon such trial.

Subdivision 1 of Rule VIII of the Rules of this court provides: "Whenever in the trial of an action or other proceeding

appealed to this court, an exhibit of a printed book or pamphlet or other printed or engraved matter, or a model, drawing, map, trademark, plans or illustrations, or other matter formed, drawn, printed or engraved, is introduced or offered in evidence, and it is desired by either party to use the same original exhibit as part of a statement on motion for new trial, or in a bill of exceptions, such exhibit, authenticated by a certificate of the judge of the trial court thereon or attached thereto, may be brought to this court in its original form as introduced in evidence, either bound in the transcript of the record on appeal, if convenient to do so, or as an exhibit accompanying such record to this court. * * *" There was not even a pretense of compliance with the provisions of this rule.

An original exhibit used in the trial court may be used on appeal in this court, provided it is identified as such original exhibit *in its original form* as introduced in evidence in the court below; and further provided that these facts are made to appear positively by the certificate of the judge who presided at the trial in the court below. In the present instance there is nothing before us to indicate either that these are the original ballots used on the trial of this case, or, if they are, that they are in the original form as introduced in evidence. For these reasons these ballots are not before us for consideration; and, there being no other evidence of the particular markings on the ballots of which complaint is made, we cannot consider this ground of alleged error.

2. It is said that the court erred in counting the ballots cast at Poplar precinct. The court found that this respondent received 619 votes, 37 of which were cast at Poplar precinct; and that his opponent, Cosner, received 539 votes, 12 of which were cast at Poplar precinct. From this it is apparent that, if the votes cast for these respective candidates at Poplar precinct be deducted from the total vote which each received in the county, the result of the election will not be affected; and this being so, the reception of those ballots did not prejudice the rights of the unsuccessful candidate, or of the appellant in this case, and neither can complain.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.

———

33 197
p33 199

(Submitted November 8, 1905. Decided November 17, 1905.)